ORDERED in the Southern District of Florida on ___SEP 14 2007___



_____
A. Jay Cristol, Chief Judge Emeritus
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE:

JANET DORIS VERNELL and
LOUIS VERNELL, JR.,

  Debtors.
_____/

CASE NO. 07-15396-BKC-AJC

CHAPTER 13

### MEMORANDUM OPINION GRANTING DEBTORS' APPLICATION FOR EMPLOYMENT OF ARTHUR W. TIFFORD, ESQUIRE AND THE LAW FIRM OF TIFFORD & TIFFORD, P.A., AS DEBTORS' SPECIAL COUNSEL

THIS MATTER came before the Court on August 14, 2007, upon the Debtors' Application for Employment of Special Counsel (the "Tifford Application") wherein the Debtors seek to retain Arthur W. Tifford, Esquire ("Attorney"), of the Law Firm of Tifford & Tifford, P.A. ("Law Firm"), as special counsel in the Debtors' Chapter 13 case for the purpose of prosecuting their adversary proceeding against Washington Mutual Bank ("Washington Mutual"), Transcontinental Title Company and First American Title Insurance Company, Inc., which was removed from Florida State Court and assigned Adv. No. 07-01626-BKC-AJC-A.

## BACKGROUND

The pertinent facts relating to the Tifford Application are not in dispute. Washington Mutual opposes the Vernells' motion on the grounds that the Attorney and the Law Firm have a disqualifying conflict of interest. As explained in this Memorandum Decision, the Tifford Application is granted.

The Vernells, on November 12, 2002, filed suit for a declaratory judgment against Washington Mutual in the General Jurisdiction Division, Eleventh Circuit Court, Miami-Dade County, Florida ("the Florida State Court"), which civil action was assigned Case No. 02-28406 (CA 22) ("WaMu State Court case"). In the WaMu State Court case, the Vernells sought to abrogate the mortgage which Washington Mutual held encumbering their homestead property in Miami-Dade County, Florida. Washington Mutual denied the validity of the Debtors' claims and, on January 31, 2003, counterclaimed against the Vernells for the foreclosure of its mortgage.

In 2002 and 2003 the Vernells filed civil actions against First Union National Bank, n/k/a Wachovia Bank, N.A., and various individuals in the General Jurisdiction Division, Eleventh Circuit Court, Miami-Dade County, Florida ("the Florida State Court"), which civil actions were assigned Case Nos. 02-28408 CA 15 and 03-6576 CA 15, respectively ("Wachovia State Court cases). In both of these actions, the Vernells sought to abrogate mortgages which Wachovia Bank held encumbering their homestead property owned by Janet Vernell in Miami-Dade County, Florida, other equitable relief and money damages, reserving their right to request punitive damages pursuant to Florida state law.

In late September, 2005 the Vernells engaged the Attorney and the Law Firm to represent Janet Vernell in the civil actions. The Vernells, on September 30, 2005, executed a $100,000.00

promissory note in favor of the Law Firm, which promissory note was secured by a mortgage encumbering their homestead property, owned by Janet Vernell, in which the two resided for decades as their residence in Miami-Dade County, Florida. The September 30, 2005, mortgage was recorded on November 5, 2005, under Clerk's File No. 2005R1149010 at Page 23933, Page 4177 of the Public Records of Miami-Dade County, Florida. Attorney and Law Firm filed their notice of appearance in the WaMu State Court case in October, 2005.

On December 12, 2005, the Vernells executed a second $100,000.00 promissory note in favor of the Law Firm, which promissory note was secured by a mortgage encumbering the same homestead property and residence in Miami-Dade County, Florida. The December 12, 2005, mortgage was recorded on February 13, 2006, under Clerk's File No. 2006R0157473 at Page 24234, Page 0591 of the Public Records of Miami-Dade County, Florida. This second mortgage in favor of the Law Firm was to secure the payment of attorneys fees in the Wachovia State Court cases. Attorney and Law Firm filed their notice of appearance in the Wachovia State Court cases in December, 2005.

This Chapter 13 case was filed on July 11, 2007. Prior to that date, Attorney and Law Firm made a $5,000.00 or $5,500.00 loan to the Vernells, the proceeds of which were used by them to engage Attorney D. Jean Ryan and the law firm of Ryan & Dunn, P.A. to serve as their counsel in this Chapter 13 case.

At the hearing conducted on August 14, 2007, Attorney Ryan advised the Court that the Debtors had already incurred fees in excess of $5,500.00. A separate motion has been filed by the Debtors to approve the source of the funding of the Debtors' general bankruptcy counsels' fees.

The issue presented by the foregoing facts is whether the Attorney and the Law Firm hold an interest adverse to the Debtors or the estate with respect to the matter on which the Attorney is to be employed which would warrant denial of the Tifford Application. Washington Mutual asserts the mortgages and pre-petition loan created an unavoidable conflict of interest requiring denial of the application. The Court disagrees.

## **LEGAL ANALYSIS**

The Tifford Application is seeking employment under Section 327(e) of the Bankruptcy Code. Section 327(e) provides:

> The trustee [or debtor], with the court's approval, may employ, for a specified special purpose other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold an interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

While the more stringent disinterestedness standard of Section 327(a) applicable to the employment of general counsel does not apply to special counsel,[1] such a professional must still

---

[1] The term "disinterested person" is defined by § 101(14), Bankruptcy Code, 11 U.S.C. § 101(14), to mean a person who:

> (A) is not a creditor, an equity security holder, or an insider;
>
> (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
>
> (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

Although several courts have held to the contrary, this Court agrees with those courts which have concluded that the "disinterested person" test of 11 U.S.C. § 327(a) is inapplicable to the appointment of special counsel for the debtor under 11 U.S.C. § 327(e). *See, e.g., RFCBC, Inc. v. Kovacs, Trustee (In re: National Staffing Services, LLC)*, 2007 U.S. Dist. LEXIS 50944 (N.D. Ohio 2007); and *In re: Tri-State Ethanol Company, LLC*, 2007 Bank. LEXIS 1412 (D.S.D. 2007).

4

be free from adverse interest to the debtor or to the estate with respect to the matters on which he is to be employed. *See, In re Abrass*, 250 B.R. 432 (Bankr. M.D. Fla. 2000). The primary concern raised by Washington Mutual is that the existence of a security interest in the Debtors' residential real property creates or potentially creates such a disqualifying adverse interest.

The term "adverse interest" is not defined by the Bankruptcy Code. An often-cited definition of "to hold an adverse interest" is: (1) to possess . . . an economic interest that would tend to lessen the value of the bankruptcy estate or that would create an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate. *In re Roberts*, 46 B.R. 815, 827 (Bankr. D. Utah 1985), *rev'd* in part on other grounds, 75 B.R. 402 (D. Utah 1987); *Roger J. Au & Son, Inc. v. Aetna Insurance Company*, 64 B.R. 600, 604 (N.D. Ohio 1986).

Washington Mutual relies on *In re Chapin*, 2002 WL 33939732 (Bankr. D. Idaho 2002), *In re Fretter, Inc.*, 219 B.R. 769 (Bankr. N.D. Ohio 1998) and *In re Pierce*, 53 B.R. 825 (Bankr. Minn. 1985) *aff'd* 809 F.2d 1356 (8th Cir. 1987) to support its position that special counsel cannot simultaneously maintain a security interest in property which is the subject of his representation of the Debtors. However, simply maintaining a security interest in the Debtors' homestead does not, in and of itself, create an adverse interest, as defined by 11 U.S.C. § 327(e), and the Court finds Washington Mutual's reliance on the cited cases is misplaced. There is no *per se* rule that an attorney who holds a security interest in property of the debtor or the estate is disqualified from representing the debtor.

The cases cited are inapplicable and distinguishable from the instant case. *Fretter* is inapplicable because the court therein imposed sanctions for counsel's inadequate disclosure, coupled with an adverse interest with respect to its representation. Full and fair disclosure is not

an issue in this case. In *Pierce*, the bankruptcy court held the attorney was not "disinterested" under 11 U.S.C. § 327(a) because he was a creditor who held the mortgage to secure payment of fees. 53 B.R. at 828. On appeal, the Eighth Circuit affirmed the bankruptcy court and, in dicta, suggested that the bankruptcy court could also have denied the attorneys fees because the mortgage gave him an interest adverse to the estate. However, the dictum in the Eighth Circuit's opinion is not part of the doctrine of the decision. *Pierce* is therefore inapplicable and unpersuasive.[2]

> A. The Attorney and the Law Firm Do Not Hold An Interest Adverse To The Bankruptcy Estate And The Vernells Because They Hold Two (2) Mortgages Which Encumber The Vernells' Homestead.

This Court agrees with the reasoning of the South Dakota Bankruptcy Court in *Tri-State Ethanol Company, LLC, supra,* which held that ownership of a mortgage which encumbers the debtor's property does not constitute a *per se* interest adverse to the bankruptcy estate and the debtors for purposes of appointment as special counsel under 11 U.S.C. § 327(e), particularly when the property involved is homestead property which is exempt from administration as property of the estate. Likewise, any alleged violation of the Florida Bar rules does not constitute a *per se* interest adverse to the Debtors or the estate. Indeed, in this instance, the Attorney and the Law Firm would realize no benefits from their two (2) mortgages *unless* they are successful in cancelling the mortgage held by Washington Mutual, a development which would *benefit* the Vernells and possibly the estate. Stated simply, with respect to the Vernells' assault upon the Washington Mutual mortgage, the interests of the Vernells, on the one hand, and the Attorney and Law Firm, on the other hand, are perfectly aligned. Accordingly, the Court

---

[2] The Eighth Circuit cited *In re Martin*, 59 B.R. 140, 143 (Bankr. D. Maine 1985) for the rule that a mortgage securing post-petition legal fees creates an adverse interest, but offered not explanation to support a *per se*

does not believe the mortgages held by the Attorney and the Law Firm create an adverse interest with respect to the matter on which the Attorney is to be employed.

> B. The Attorney and the Law Firm Do Not Hold An Interest Adverse To The Bankruptcy Estate And The Vernells Because They Made An Unsecured Pre-Petition Loan Of $5,000.00+ To The Vernells To Enable Them To Engage Bankruptcy Counsel For The Purpose Of Initiating This Chapter 13 Case.

This Court agrees with the reasoning of the South Dakota Bankruptcy Court in *Tri-State Ethanol Company, LLC, supra,* which held that a law firm was not disqualified under 11 U.S.C. § 327(e) from serving as the debtor's special counsel even though, by virtue of its pre-petition services to the debtor, it was a creditor in the debtor's Chapter 7 bankruptcy case. Applying the reasoning of that decision to the pending matter, this Court concludes that the Attorney and the Law Firm do not hold an interest adverse to the bankruptcy estate and the Vernells as a consequence of the pre-petition loan.

## CONCLUSION

The Court is not inclined to impose a *per se* disqualification rule against an attorney or law firm who receives a mortgage in lieu of a cash retainer for legal services. The Court believes it is more appropriate to analyze the propriety of such a mortgage on a case by case basis, taking into account all the relevant circumstances involved in each case. *In re Martin*, 817 F.2d 175, 180-83 (1st Cir. 1987) (reversing *In re Martin*, 59 B.R. 140, 143 (Bankr. D. Maine 1985)). A strict and literal interpretation of the no-adverse-interest requirement of 11 U.S.C. § 327(e) would mean that an attorney becomes disqualified as soon as he or she does any work for the debtor that is not paid for in cash or provided for on a *pro bono* basis, because that would make him or her a creditor. *Martin*, 817 F.2d at 180.

---

qualification rule. However, a couple months after the Eighth Circuit decided *Pierce, Martin* was reversed by the First Circuit, seriously undermining the suggestion of a *per se* rule.

7

This Court believes an attorney with an enforceable mortgage to secure payment of his or her allowable fees would be as likely to give advice unaffected by his or her personal interest in getting paid as an attorney who relies only on the debtor's post-petition ability to pay. Additionally, a mortgage on real property to insure payment of attorneys fees seems less likely to cause an actual conflict of interest to arise than any other type of tangible, non-cash security as real property tends to have a more stable value than other types of non-liquid assets, significant depreciation is unlikely to occur during the course of the bankruptcy case, and significant casualty losses are less likely than with other types of tangible property.

Considering all of the circumstances present in this case, the Court concludes that the Attorney and the Law Firm do not hold an adverse interest which would disqualify them from representing the Debtors. The applicants disclosed the notes and mortgages, and the loan, and Washington Mutual has not suggested that it needs any additional information to evaluate the propriety of the arrangements. The arrangements appear to be reasonable, and the amount secured does not seem to be excessive. Nothing about the arrangements suggest overreaching. Due to the Debtors' limited cash flow, the mortgages and loan appear to have been necessary to obtain counsel in both the state court and bankruptcy cases. For these reasons, the Court is convinced that the Vernells and the applicants' interests are not adverse, but rather perfectly aligned. Neither the mortgages nor the loan disqualify the Attorney or the Law Firm from serving as special counsel, as requested. Thus, it is

**ORDERED AND ADJUDGED** that the Vernells' motion for the appointment of Tifford and the Tifford Law Firm as their special counsel for the purpose of prosecuting their claims in Adv. No. 07-01626, and Adv. No. 07-01627 is GRANTED.

# # #